RECEIVED
IN ALEXANDRIA, LA

MAR - 2 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

ROSA M. GOTCH                CIVIL ACTION
     Appellant               NO. 2:08-cv-01236

VERSUS

MICHAEL J. ASTRUE           JUDGE JAMES T. TRIMBLE, JR.
COMMISSIONER OF SOCIAL SECURITY    MAGISTRATE JUDGE JAMES D. KIRK
     Appellee

REPORT AND RECOMMENDATION

Rosa M. Gotch ("Gotch") protectively filed an application for Supplemental Security Income ("SSI") on February 10, 2005. In her application, she set forth a disability onset date of May 3, 2004 due to multiple impairments. (R. 38, 41- 42). The claim was initially denied and Gotch timely filed a request for hearing before an Administrative Law Judge ("ALJ"). (R. 27, 44-47).

ALJ, Gary J. Suttles, conducted a de novo hearing on March 28, 2007 and Gotch, her representative, Anthony Mitchell, and vocational expert ("VE") Mr. Cox attended the hearing. (R. 192-252). On April 25, 2007, the ALJ issued a decision finding Gotch was capable of doing light work with a sit/stand option, postural limitations, understanding only simple instruction and concentrating on and performing only simple tasks and that considering her age, education, work experience and residual functional capacity ("RFC"), she was capable of performing jobs that existed in significant numbers in the national economy.

Therefore, she was not disabled. (R. 12-23).

Gotch sought review by the Appeals Council but review was denied on June 18, 2008. (R. 6-8). Having become the final decision of the Commissioner of Social Security ("the Commissioner"), Gotch filed the instant action seeking judicial review.

To qualify for SSI under the Social Security Act, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. §1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## SUMMARY OF PERTINENT FACTS

At the time of the hearing, Gotch was forty-five years old. (R. 41, 203). She advised that she was born with a heart murmur and took medication to treat the same. She further advised that she had bleeding stomach ulcers and suffered from sinus infections, back problems, headaches and depression. (R. 208-214).

She advised that she was not treated for her mental problems

as a child but started treatment for depression two years prior to the hearing. (R. 214). Though she did not see a therapist, as she could not afford one, she took medication which her general practitioner prescribed to treat her depression. (R. 210, 215).

Gotch completed the eighth grade in special education classes and repeated the first grade. She had a limited ability to read and write so her sister helped her complete the SSI application. (R. 176, 215-216). Her past relevant work consisted of housekeeping and janitorial work but she had not performed that work in several years. (R. 205).

She advised she could stand 30 minutes before becoming dizzy, walk half a block and probably lift 10 pounds. (R. 218). She watched television during the day and straightened up around the house. She prepared a meal on occasion, attended church twice a month and drove locally. (R. 219-220).

Jerry L. Whiteman, Ph.D. examined Gotch on August 9, 2005 and administered the Wechsler Adult Intelligence Scale-III ("WAIS-III"). Results of the testing revealed a full scale IQ of 54, a verbal IQ of 60 and a performance IQ of 57. (R. 177). Gotch was diagnosed with Post Traumatic Stress Disorder ("PTSD") on Axis I due to childhood abuse and assigned a Global Assessment of Functioning of 50. (R. 178). In summary, he found Gotch possessed moderate deficits in cognitive abilities and adaptive behaviors and needed continued medication management and supportive services to

address her basic needs. Finally, he found her ability to function independently was severely compromised.

In the Medical Source Statement regarding her mental ability to do work related activities, he noted marked limitations in understanding, remembering and carrying out short, simple and detailed instruction; the ability to make judgment on simple work-related decisions; interacting appropriately with the public, co-workers and/or supervisors and responding appropriately to work pressures in a usual work setting and/or changes in a routine work setting. (R. 179-180).

Charles M. Robertson, Psy.D. performed a mental status examination of Gotch on June 17, 2005 pursuant to a request by Disability Determinations Services. (R. 157-161). During the exam, Gotch complained of bleeding stomach ulcers, headaches and depression. He noted that she portrayed herself as someone with severe memory problems but validity testing reflected an attempt to malinger. He found she has a GAF of 65 and did not appear to have any psychiatric barriers to employment.

The ALJ issued his decision on April 25, 2007. In it, he found that Gotch, a younger individual with a limited education and no past relevant work, had not engaged in substantial gainful activity since May 3, 2004, the alleged onset of disability. He also found that her severe impairments included: gastric ulcers, degenerative disc disease and depression. However, none of these

impairments, either on their own or in combination, met a Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.17,21-22).

The ALJ also found Gotch possessed the residual functional capacity to lift and carry 20 pounds occasionally and ten pounds frequently; required an option of sitting or standing; could walk four hours in an eight hour day; had an unlimited ability to push or pull and unlimited fine and gross dexterity; had a limited ability to run or climb stairs, ladders, ropes and scaffolds; was able to get along with others, understand simple instructions, concentrate and perform simple tasks and respond appropriately to changes in the workplace and supervision. (R. 18-21). He further determined that given Gotch's age, education, work experience and RFC, there were jobs existing in significant numbers in the national economy that she could perform. (R. 22). Accordingly, as Gotch did not meet the definition of disability at any time through the date of the decision, she was found not disabled. (R. 23).

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable

mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. However, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## ISSUES

Gotch raised the following issues for appellate review:

1. The ALJ's decision to give little weight to Dr. Whiteman's opinion was conclusory and unsupported by substantial evidence;

2. The ALJ erred in relying upon the testimony of the VE.

## DISCUSSION

### Evaluation of Dr. Whiteman's Opinion

Gotch argues that the ALJ failed to explain how Dr. Whiteman's opinion was inconsistent with the evidence considered as a whole and erred in failing to mention or identify the listed impairment in Listing 12.05. The crux of the argument is really whether or not the ALJ erred in finding that the opinion of Dr. Robertson outweighed that of Dr. Whiteman.

"The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Marinez v. Chater, 64 F.3d 172, 176 (5th Cir. 1995). However, the evidence cited by the ALJ in support of his decision in this case is not sufficient support. The ALJ gave little weight to Whiteman's opinion because "it is unsupported by objective clinical findings and is inconsistent with the evidence considered as a whole." However, much of Dr. Whiteman's opinion is based on the objective scores and results obtained after administering the WAIS III test. The results revealed a full scale IQ of 54, a verbal IQ of 60 and a performance IQ of 57 as well as marked limitations in independent functioning and adaptive behaviors. Dr. Robertson did not administer WAIS III testing. Instead, he conducted a memory test.

The results of which he opined reflected malingering. It was this conclusion that the ALJ used as support to question the validity of Gotch's IQ scores claiming she might not have put forth her best effort during testing. Even so, Dr. Whiteman commented that Gotch's short term memory was below average and her mathematical and verbal reasoning scores reflected deficits in independent functioning and adaptive behaviors. So much so, he concluded her ability to function independently was severely compromised.

As further support for his finding that Dr. Whiteman's opinion should be accorded little weight, the ALJ cited the fact Dr. Whiteman only saw Gotch once. It is curious why this is noted as support since Dr. Robertson evaluated Gotch on the same number of occasions. The ALJ also attempts to hang his hat on the fact Gotch completed the eighth grade, worked several jobs, obtained a drivers license and drove a car. While it is accurate that Gotch completed the eighth grade, she did so in special education classes and had to repeat the first grade. Further, the fact she could preform janitorial work and drive a car is not indicative of whether or not she is mentally challenged. The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (2000) ("DSM-IV-TR"), indicates that though people are mildly mentally retarded, they usually achieve social and vocational skills adequate for minimum self support and can live successfully in the community. (DSM-IV-TR, 43, Section 317).

Other evidence cited by the ALJ includes the Medical Source Opinion of Linda Hartwell, Ph.D. who reviewed the medical record and determined Gotch did not have a medically determinable mental impairment. At the time Dr. Hartwell reviewed the record, she did not have the benefit of Dr. Whiteman's report as he had not yet evaluated Gotch. Had she reviewed the report which indicated that Gotch meets the criteria for Listing 12.05(B) and/or (C), she might have reached a different conclusion.

Given this conflicting evidence and the less than convincing reasoning of the ALJ, one cannot say that substantial evidence supports the ALJ's conclusion. By the same token, the evidence in the record does not entitle Gotch to a decision in her favor. Therefore, in view of the contradicting findings by the two psychologist, the matter should be remanded for the purpose of having Gotch submit to an examination for a third psychological assessment. After such assessment is completed, a determination should be made by an ALJ as to whether or not Gotch meets Listing 12.05.

Testimony of the VE

Gotch also argues that the ALJ erred in relying upon the testimony of the VE. In light of the aforementioned finding, there is no need to address this argument.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Gotch's appeal be GRANTED; the final decision of the Commissioner be VACATED; and, the case be REMANDED for proceedings consistent with the views expressed herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **(14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **(14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN (14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 2nd day of March, 2010

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE